UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-10263-RGS

EDITH CAZALES

v.

HSBC BANK, NA, TRUSTEE

MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION TO DISMISS

June 1, 2012

STEARNS, D.J.

This action arises from a now familiar tale: a mortgagor, having defaulted on her loan, challenges the effort of the mortgagee to foreclose on the encumbered home. Edith Cazales claims that defendant HSBC Bank USA, National Association, as Trustee for Deutsche Alt-A Securities, Inc., Mortgage Pass-Through Certificates, Series 2006-AR3 (HSBC), willfully brushed aside a passel of consumer-friendly Massachusetts statutes and unfairly denied her the opportunity to adjust the terms of her mortgage.[1]  Cazales seeks to quiet title on the property (Count XI) and to obtain an

---

[1] Cazales alleges the following claims: fraud (Count I); transacting business in the Commonwealth without the authority to do so, in violation of Mass. Gen. Laws ch. 156D (Count II); violating the Consumer Protection Act (Mass. Gen. Laws ch. 93A) (Count III); breach of contract (Count IV); breach of fiduciary duty (Count V); violating Mass. Gen. Laws ch. 140D (Count VI) and ch. 93, § 48 (Count VII);

award of a declaratory judgment to "invalidate[] the defective assignment to HSBC

[and] declare[] HSBC's foreclosure practices to be unlawful and in violation of state

and federal laws and regulations . . . ." Am. Compl. ¶ 213. HSBC, for its part, asks

that the Complaint be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) for

failure to state a claim cognizable at law or in equity.

BACKGROUND

On March 28, 2006, Cazales executed a promissory note to Franklin Bank in the

amount of $225,000, in exchange for the purchase money for a home in Randolph,

Massachusetts. That same day, Cazales granted a mortgage to Mortgage Electronic

Registration System (MERS), as nominee for Franklin Bank, to secure payment of the

note.[2] *Id.* ¶¶ 3, 8-9. MERS assigned the mortgage to HSBC on November 23, 2010.[3]

---

negligence (Count IX); and promissory estoppel (Count X).

[2] Franklin Bank is not a party to this action, although most of Cazales' allegations concern it.

[3] The assignment is attached as an exhibit to HSBC's motion to dismiss. *See* Def. Mot. to Dismiss, Ex. C. *See also* Am. Compl. ¶ 35. Cazales contends that the assignment of the mortgage is defective because the naked assignment of a mortgage without the underlying note does not confer a right to foreclose. As this court has held repeatedly, this is not a correct statement of Massachusetts law. In this Commonwealth, a foreclosing entity must be the current mortgagee of record and the holder of the mortgage; it need not be the note holder. *See, e.g., Kelly v. Deutsche Bank Nat'l Trust Co.*, 2011 WL 2262915, at *3 (D. Mass. Jun. 9, 2011). The court is aware that the Supreme Judicial Court of Massachusetts may soon revisit this issue. *See Eaton v. Fed. Nat'l Mortg. Ass'n*, No. 111382, slip op. (Mass. Super. Ct. June 17,

Cazales alleges that "Franklin Bank concealed the material fact of its true use and purpose of MERS and its then present intent to sell the loan into the securitization paradigm." Am. Compl. ¶ 63. "There is nothing in the Promissory Note or Deed of Trust to indicate [Cazales] is putting [her] home at risk under a Mortgage Loan that will be sold to anyone, or in any form, that would result in successor holders lacking an intimate, and long-term stake in the underlying subject of the loan transaction . . . ." *Id.* ¶ 66.[4] In other words, Cazales alleges that had she but known that her mortgage loan might be dumped into a pool of securitized mortgages, she would not have signed the promissory note.[5]   *Id.* ¶ 59.

---

2011) (McIntyre, J.) (appeal pending SJC-11041).  However, until it does, this court is bound to apply the law as it is, and not as plaintiff would wish it to be.

[4] Cazales continues: "Rather than treat [Cazales'] Mortgage Loan with the care and concern of a long-term investment, Franklin Bank and successive creditors and other parties in interest treated [her] Deed of Trust more like a 'hot potato' such that none of the successive intermediaries handling Borrower's loan had any financial concern for the true object of the transaction, a residential home . . . . Franklin Bank's interests were liquidated for short term gains in favor of a system destined to undermine the housing market, strip [Cazales] of equity in [her property], interfere with [her] ability to meet the financial obligations under the Promissory Note, and deny [her] the fruits of this contract." *Id.* ¶¶ 70-71.

[5] This assertion implies that Cazales *knew* in March of 2006 when she signed the note that the securitization of a mortgage loan entailed some additional risk of loss (although the lion's share of the exposure fell to the investor in the tranche and not to the original borrower so long as she remained current on the payments).  The contention is inconsistent with the claim that Cazales came to the table as a naive and unsophisticated borrower. *Id.* ¶ 58.

In August of 2011, Cazales contacted her servicer, American Home Mortgage Servicing, Inc. (AHMSI), to apply for a loan modification through the federal Home Affordable Modification Program (HAMP).[6]  *Id.* ¶ 85.  AHMSI informed Cazales that HSBC – "their investor" – was not a HAMP participant and that she was therefore ineligible for a HAMP modification.[7]  *Id.* ¶ 86.  Sometime thereafter, Cazales defaulted on her loan, and a notice of foreclosure sale issued on December 12, 2011.[8]  *Id*. ¶ 17. According to Cazales, HSBC failed to provide her with proper statutory notice of her right to cure pursuant to Mass. Gen. Laws ch. 244, § 35A; failed to provide notice of the sale in a locally circulated newspaper pursuant to Mass. Gen. Laws ch. 244, § 14;

---

[6] In March of 2009, the United States Department of Treasury announced the details of HAMP as part of the optimistically styled "Making Home Affordable Program."  Under HAMP, individual loan servicers voluntarily enter contracts with Fannie Mae, acting as the financial agent of the United States, to perform loan modification services in exchange for certain financial incentives.

[7] To the extent that Cazales' claims depend on the fact that HSBC did not offer her a HAMP modification, they are without merit.  In the first instance, "HAMP explicitly precludes any private right of action."  *Durmic v. J.P. Morgan Chase Bank, NA*, 2010 WL 4825632, at *2 n.9 (D. Mass. Nov. 24, 2010).  Moreover, because Cazales was told from the beginning that she was ineligible to participate in HAMP, she has no viable claim involving any contractual breach of the HAMP Trial Period Plan.  *Id*.

[8] A Massachusetts trial court granted Cazales' request for a temporary restraining order barring HSBC from proceeding with the foreclosure.  HSBC subsequently removed the action to the federal district court, but has not yet rescheduled the foreclosure sale.

and failed to provide statutory notice of its intent to collect a deficiency pursuant to

Mass. Gen. Laws ch. 244, § 17B.[9]

Cazales filed this action in Norfolk Superior Court in January of 2012.  HSBC

removed the action to the federal district court in February of 2012.  On March 19,

2012, Cazales filed an Amended Complaint.  HSBC filed a motion to dismiss on March

23, 2012, followed by Cazales' opposition on April 13, 2012.[10]

DISCUSSION

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must

allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559

(2007).  "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed

factual allegations, a plaintiff's obligation to provide the 'grounds'  of [her]

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

---

[9] Cazales' complaint that HSBC failed to properly seek judgment from the Land Court that she was not eligible (as she is not) for relief under the Servicemembers Relief Act borders on the specious.  *See Akar v. Fed. Nat. Mortg. Ass'n*, 2012 WL 538212, at *11-12 (D. Mass. Feb. 9, 2012), quoting *Beaton v. Land Court*, 367 Mass. 385, 390 (1975) ("Under Massachusetts law, 'actions taken to comply with the [Servicemembers Act] . . . are not in themselves mortgage foreclosure proceedings in any ordinary sense.  Rather, they occur independently of the actual foreclosure itself and . . . failure to comply with the [Servicemembers Act] would not render the foreclosure invalid as to anyone not entitled to the protection of that act.'").

[10] The court determined that a hearing was not a necessary aid to its decision. *See* L.R. 7.1(e).

5

recitation of a cause of action's elements will not do." *Id.* at 555 (internal citations omitted). *See also Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997), quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988) (dismissal for failure to state a claim is appropriate if the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.").

### Fraud (Count I)

Cazales premises her fraud claim on Franklin Bank's failure to explain that the mortgage on her home could be pooled with others and then be bought and sold on the mortgage-backed securities market. Cazales fails to allege, however, any plausible basis on which HSBC could be held liable for the torts of Franklin Bank, the predecessor mortgagee. HSBC entered the transaction as a bona fide purchaser for value, acquiring the mortgage by way of an assignment free and clear of the undisclosed intentions of the original contracting parties. *See Ford v. Lehman Capital*, 2012 WL 1343977, at *6 (D. Mass. Apr. 17, 2012).[11]

---

[11] For the same reason, Cazales' claim that HSBC breached the implied covenant of good faith and fair dealing must fail. "The implied covenant of good faith and fair dealing provides 'that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . .'" *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471 (1991) (internal citations omitted). Here, the purpose of the contract was the creation of a lender-borrower relationship between the parties. It is the original lender's contract about

Even if some plausible basis existed on which HSBC could be charged with responsibility for Franklin Bank's conduct, Cazales' signed mortgage contained the exonerating disclaimer that: "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." Deed of Trust ¶ 20, Compl. Ex. F. Cazales has not articulated any theory under which Franklin Bank would have been obligated to explain to her the ramifications of a securitization and sale of her mortgage. *See Rood v. Newberg*, 48 Mass. App. Ct. 185, 192 (1999) (nondisclosure does not generally amount to fraud, and is not a tort of any sort where the nondisclosing party has no duty to speak). Nor did Franklin Bank owe Cazales a duty to warn her that her loan could become a "hot potato." *See In re Fordham*, 130 B. R. 632, 646 (B. R. D. Mass. 1991) ("A lender . . . owes to its borrower or guarantor no duty to use reasonable care to determine that a project is sufficiently feasible to permit repayment of the loan.").

***Transacting Business Without Authority pursuant to Mass. Gen. Laws ch. 156D***

---

which Cazales complains, a contract for which HSBC is not responsible. Her promissory estoppel claim is also without merit as she has failed to allege that HSBC made any specific representation on which she could have reasonably relied. *See Bongaards v. Millen*, 440 Mass. 10, 15 (2003). Likewise, Cazales has alleged no facts supporting a claim for breach of fiduciary duty against HSBC. *See FAMM Steel, Inc. v. Sovereign Bank*, 571 F.3d 93, 102 (1st Cir. 2009) ("[T]he relationship between a lender and a borrower, without more, does not establish a fiduciary relationship.").

*(Count II)*

"A foreign corporation that transacts business or has a usual place of business in the commonwealth shall deliver the certificate required by section 15.03 to the secretary of state for filing." Mass. Gen. Laws. ch. 156D, § 15.01(a). From the court's own examination, no deficiencies, errors, or irregularities appear on the face of HSBC's Foreign Corporation Certificate Registration, which Cazales attaches as an exhibit to her Complaint. *See* Ex. H (Dkt #8).[12]

### *Violation of Mass. Gen. Laws ch. 93A (Count III)*

To prevail on a Chapter 93A claim, a plaintiff must show that a defendant engaged in "[u]nfair methods of competition and unfair or deceptive acts or practices in business transactions." Mass. Gen. Laws. ch. 93A, § 2. Practices are deceptive in the context of Chapter 93A if they could reasonably be found to have "'caused a person to act differently from the way [she] otherwise would have acted.'" *See Aspinall v. Philip Morris Cos., Inc*., 442 Mass. 381, 394 (2004), quoting *Purity Supreme, Inc. v. Atty. Gen.*, 380 Mass. 762, 777 (1980). An action pursuant to Chapter 93A is "neither wholly tortious nor wholly contractual in nature." *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 704 (1975). The boundaries of what qualifies as conduct violating Chapter

---

[12] The meaning of Cazales' conclusory allegation that HSBC failed to properly identify itself as a "professional  corporation" is undecipherable.

93A is a question of law, not fact. *Casavant v. Norwegian Cruise Line Ltd.*, 460 Mass. 500, 503 (2011).

The only potentially plausible Chapter 93A ground on which Cazales attempts to set foot is the alleged violation by HSBC of the notice provisions of Mass. Gen. Laws ch. 244, § 14.[13] The court, however, is not persuaded that a violation of section 14, standing alone, amounts to "unfair or deceptive conduct," whatever the other consequences. *See U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 647 (2011). The issue is academic, however, as Cazales has not pled service of a demand letter on HSBC. *See Spring v. Geriatric Auth. of Holyoke*, 394 Mass. 274, 287 (1985) ("We have often held that '[a] demand letter listing the specific deceptive practices claimed is a prerequisite to suit and as a special element must be alleged and proved . . . .'") (internal citation omitted); *Lingis v. Waisbren*, 75 Mass. App. Ct. 464, 468-471 (2009) (where there was no evidence that the demand letter had been sent, received, or replied to, plaintiff's Chapter 93A claim necessarily failed).[14]

***Violation of Mass. Gen. Laws ch. 140D (Count VI)***

[13] Cazales also cites to the Unfair or Deceptive Trade Practices defined by 940 CMR 3.09, although these apply only to "door to door sale or home improvement transaction[s]."

[14] HSBC also points out that because no foreclosure sale has yet to occur, and because the sale has not been re-scheduled, any claims that HSBC has not properly exercised the power of sale are speculative at best.

Chapter 140D, the consumer credit cost disclosure statute, permits a borrower (subject to certain restrictions) to rescind a loan transaction; an alternative remedy that Cazales seeks.[15]  Mass. Gen. Laws ch. 140D, § 10.  The rescission section does not, however, apply to "a residential mortgage transaction as defined in section one." *Id.* § 10(e)(1)(A).  Section 1defines a "residential mortgage transaction" as "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling."  Thus, this statute is inapplicable to Cazales.[16]

---

[15] Rescission is appropriate when a creditor has made a misstatement or failed to make a necessary disclosure.  "Chapter 140D of the General Laws was closely modeled on the Federal Truth-in-Lending Act (15 U.S.C. §§ 1601 et seq. [1994])." *Mayo v. Key Fin. Servs., Inc.*, 424 Mass. 862, 864 (1997), citing *Lynch v. Signal Fin. Co.*, 367 Mass. 503, 505 (1975).  The statute's concern is with material disclosures, defined as "the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, and the due dates or periods of payments scheduled to repay the indebtedness."  Mass. Gen. Laws ch. 140D, § 1.  These disclosures are not at issue in this case.

[16] Count VII, the alleged violation of Mass. Gen. Laws ch. 93, § 48 (the Home Solicitation Act), is also inapplicable to Cazales.  The statute applies to agreements "providing for the sale or lease of goods, or the rendering of services, or both, primarily for personal, family or household purposes in excess of twenty-five dollars in value and which is consummated by a party thereto at a place other than the address of the seller or lessor . . . . "   The Act is intended "to protect consumers against being overborne by high pressure tactics of vendors making door to door pitches in places of residence."

10

ORDER

For the foregoing reasons, HSBC's motion to dismiss is <u>ALLOWED</u>.[17]   The

Clerk will enter an Order of Dismissal and close the case.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE

---

*Donaher v. Porcaro*, 47 Mass. App. Ct. 650, 652 (1999).  *See Deere & Co. v. Ford*, 2002 WL 2017097, at *11 (Mass. Super. Jul. 23, 2002).  The typical mortgage is not sold door to door.

[17] The court can quickly dispose of the final two counts, which press claims  to quiet title, *see Oum v. Wells Fargo, N.A.*, 2012 WL 390271, at *3 (D. Mass. Feb. 8, 2012) ("[A] quiet title action is not an avenue open to a mortgagor whose debt is in arrears because, until the mortgage is discharged, the title necessarily remains under a cloud."), and negligence, *see FMR Corp. v. Boston Edison Co.*, 415 Mass. 393, 395 (1993) ("[P]urely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage.").